William J. Morris v. Commissioner.
Morris v. Commissioner
Docket No. 70830.
United States Tax Court
T.C. Memo 1960-68; 1960 Tax Ct. Memo LEXIS 221; 19 T.C.M. (CCH) 348; T.C.M. (RIA) 60068; April 8, 1960
*221 Petitioner was 50 per cent owner and principal officer of a partnership and a corporation engaged in the "cut, make and trim" part of the manufacture of men's clothing in 1946 and 1947. Petitioner drew checks on the partnership and corporation payable to fictitious payees, endorsed the names of the payees thereon, cashed the checks or had them cashed by friends, and received the proceeds thereof in cash. He did not report the proceeds as income but claimed he paid the cash to a tailoring contractor of the partnership and corporation, at the insistence of the contractor, for extra charges made by the contractor. Held: The proceeds of the checks were income to petitioner in 1946 and 1947, and his failure to report them as such was due to fraud with intent to evade tax. Held: Petitioner did not receive unreported income in 1946 from the sale of linings and woolens to Ramley Clothes. Held: Bad debt loss disallowed for failure to prove worthlessness. Held: Petitioner failed to prove error in respondent's determination of unreported interest income and partial disallowance of deduction for sales tax. James A. Ronayne, Esq., for the petitioner. Edward N. Delaney, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1946 and 1947 in the amounts of $20,733.42 and $778.34, respectively, and additions to tax under section 293(b), I.R.C. 1939, in the amounts of $12,154.93 and $389.17, respectively. The issues are (a) whether any part of the deficiencies for the years 1946 and 1947 is due to fraud with intent to evade tax under section 293(b); (b) whether petitioner had unreported income in the years 1946 and 1947 in the following amounts from the following sources: (1) $15,092.73 and $2,252.75 in 1946 and 1947, respectively, from cashing checks drawn on a partnership and corporation in which he was 50 per *223 cent owner and made payable to fictitious payees; (2) $27,375.24 in 1946 from sales of woolens and linings to Ramley Clothes; (3) $261.02 and $352.89 in 1946 and 1947, respectively, from interest on savings accounts and Government bonds; (c) whether petitioner suffered a loss from a bad debt in 1947; and (d) whether respondent properly disallowed $60 of a claimed deduction of $100 for city sales tax in the year 1947. Respondent agrees that the statute of limitations bars assessment of the deficiencies determined for each year unless fraud is found. Findings of Fact The facts stipulated are so found. Petitioner filed his Federal income tax returns for the calendar years 1946 and 1947 with the now director of internal revenue for the lower Manhattan district of New York. Commodore Clothes, a partnership, was formed on January 1, 1946 with William J. Morris, petitioner herein, and Frances E. Gross, nominee for Max Berkowitz, as equal partners. On August 6, 1946, William J. Morris, Inc., was incorporated under the laws of New York with petitioner and Max Berkowitz each owning 50 per cent of its stock. On August 31, 1946, the partnership ceased operations and all its assets were *224 transferred to the corporation. The corporation, which filed its tax returns on a fiscal year basis beginning September 1, 1946, changed its name to Commodore Clothes Corporation or Commodore Clothes, Inc., on March 19, 1947. Reference to "Commodore" hereafter will refer to both the partnership and the corporation. Commodore, throughout the years 1946 and 1947, was engaged in the "cut, make and trim" part of the business of manufacturing men and women's clothes in New York City. Its principal method of operation was to receive cloth from its customers, cut such cloth to specifications, and subcontract to others the sewing and tailoring work. Commodore did only cutting and trimming. It paid the subcontractors for the sewing and tailoring, and upon delivery of the finished garments to its customers, billed the customers for the total cost plus markup. Berkowitz, with whom petitioner had been associated in business for several years, was primarily responsible for cutting the cloth, and petitioner was salesman and office manager for Commodore. Petitioner was the principal officer of Commodore and was in charge of the books and records, drew its checks and paid its bills. The partnership *225 reported gross receipts of $144,206.33, gross profit of $26,208.82 and net income of $12,453.50 on its tax return for the period January 1, 1946 to August 31, 1946, and the corporation reported gross sales of $199,854.23, gross profit of $40,383.19 and net income of $3,081.57 on its tax return for the period September 1, 1946 to August 31, 1947. Victory Tailoring Company, hereafter referred to as Victory, a partnership consisting of John Cottone and Dominic Scarfo, did most of the sewing and tailoring work for Commodore during 1946 and 1947. Cottone ran the shop and did the tailoring while Scarfo was the office man in charge of the bookkeeping and payrolls. Prices for sewing and tailoring in New York were set by the garment workers' union during this period which established the various grades of work and the prices to be charged therefor. Tailors were not supposed to charge above the union price for piecework of a certain grade. After the war it was difficult for tailors to hold their employees at the wage scale so set. At times Victory made an extra charge for "improvements" on its contract work for Commodore. During the period from January 5, 1946 through April 30, 1947, petitioner *226 drew checks on both the partnership and the corporation payable to fictitious payees. It is stipulated that four such checks, totaling $2,552.99, were drawn on the partnership during 1946 and were made payable to variations of the name "John Catone." It is further stipulated that twelve such checks, totaling $12,644.49, and dated between September 23, 1946 and December 31, 1946, were drawn on the corporation and made payable to variations of the name "Catone," variations of the name "Schwartz," one to "M. Goldstein" and one to cash. One such check in the amount of $1,342.75 was dated December 31, 1946. It is also stipulated that one such check in the amount of $910 and dated April 30, 1947 was drawn on the corporation and made payable to "J. Catone." The named payees did not receive any of these checks or the proceeds therefrom. Petitioner endorsed the payee's name thereon, cashed the checks or had them cashed by friends, and received the proceeds therefrom in cash. All of these checks were deducted as a part of the cost of goods sold by the partnership and the corporation in arriving at net income reported for tax purposes. Petitioner did not include the amount of any of these checks *227 in his income reported on his tax returns for 1946 and 1947. Only two of these checks are supported by invoices found in the records of Commodore. Those two checks are supported by fictitious invoices from a "J. Catone" of 500 Driggs Avenue, Brooklyn, New York, which were prepared by petitioner. No one named J. Catone occupied the premises at 500 Driggs Avenue and John Cottone, of Victory, did not send out invoices in this name and did not receive any of the above mentioned checks or the proceeds thereof. In his notice of deficiency to petitioner, respondent added $15,092.73 and $2,252.75 to petitioner's reported income for the years 1946 and 1947, respectively, from cashing checks drawn in the names of fictitious payees. In his audit of the partnership return for part of the year 1946, respondent made no adjustment in the partnership net income because of any of the above checks. Petitioner loaned Edward S. Friedland the sum of $1,800 on November 16, 1946. In 1947, when this sum was not repaid by Friedland, petitioner obtained a judgment against Friedland. This judgment was attached by a United States marshal to apply on a judgment obtained by George Mahler against petitioner. *228 Petitioner received additional and unreported income in the amounts of $15,092.73 and $2,252.75 in the years 1946 and 1947, respectively, from cashing checks drawn in the names of fictitious payees. Petitioner received unreported income from interest on savings accounts and Government bonds in the amounts of $261.02 and $352.89 in the years 1946 and 1947, respectively. Petitioner did not receive any income individually from sales of linings and woolens to Ramley Clothes in 1946. A part of the deficiency in petitioner's income tax for each of the years 1946 and 1947 was due to fraud with intent to evade tax. The Federal income tax returns filed by petitioner for each of the years 1946 and 1947 were false or fraudulent returns with intent to evade tax. Opinion The burden of proving fraud is on respondent and he must prove it by clear and convincing evidence. A. W. Mellon, 36 B.T.A. 977. Here respondent has proved, and in fact petitioner admits, that petitioner drew checks on the partnership or corporation payable to fictitious payees and then endorsed the payee's name and cashed the checks, receiving the proceeds therefrom. This appears to have been done rather *229 systematically during the year 1946 and at least once during the year 1947. There is also evidence that at times petitioner prepared fictitious invoices to support these checks. Proof of petitioner's receipt of the proceeds from these checks and the failure to report it as income under such circumstances, without more, was, in our opinion, sufficient evidence to prove fraud. (Additional evidence of excessive bank deposits and increases in net worth, which the revenue agent testified he found but did not include in his report, would, if proved, have bolstered respondent's proof and made our task easier, but we do not think such evidence was necessary to prove fraud.) After respondent had shown rather convincingly by a handwriting expert and other evidence that the same person who signed the above checks had endorsed the name of the payee thereon, petitioner admitted that he had drawn the checks to fictitious payees, endorsed them, and received the cash therefrom, but further testified that he used all the proceeds of these checks to pay extra charges required to be made in cash to Scarfo of Victory Tailoring for use in paying bonuses to Victory's tailors, that he was forced to do *230 this to avoid a slowdown in the tailoring work being done for Commodore, that he used the method described above because Scarfo demanded cash and in order to provide some records to support these payments as being a part of Commodore's business expenses. There is reason to believe that Commodore did pay some of Victory's charges in cash. Some checks were drawn to fictitious payees and cashed as above, but were dated at about the same time and in the same amount as actual invoices received from Victory, and respondent did not charge these as additional income to petitioner. However, aside from petitioner's own self-serving statement that he paid the proceeds of these checks to Scarfo, there is no evidence to support petitioner's claim - in fact, what additional evidence there is tends to refute his testimony. Scarfo was called as a witness by petitioner out of turn but under circumstances of petitioner's own choosing. Scarfo testified that Victory sometimes billed Commodore for "improvements" but that these were for extras on the garments, that such charges, as well as all other charges for services made by Victory, were always included on invoices sent to Commodore on Victory's own *231 invoice blanks, that while he may occasionally have received some cash from petitioner, it was only for extra trimmings or for "presents to people," and that he did not endorse or receive the proceeds from any of the checks which respondent has charged to petitioner. While the veracity of Scarfo as a witness may be subject to doubt, particularly inasmuch as Victory's income had been audited by respondent who charged it with additional income from invoices sent to Commodore but not recorded on Victory's books, nevertheless, his testimony coupled with that of Cottone, who also testified that he did not receive these checks or the proceeds therefrom and did not send out invoices in the name of "J. Catone," refutes, or at least is of no support to, petitioner's claim. Furthermore, petitioner testified that he had to have something in support of these cash payments for his accountant to allow Commodore to deduct the payments as business expense, and that he made up fictitious invoices for that purpose. Yet, the checks here involved were not supported by any invoice, except in the two instances mentioned above. Petitioner offered no additional evidence to support his position. We are convinced *232 from all the evidence submitted that, although petitioner may have paid some cash to Scarfo, he kept at least a part of the cash he received from these checks for himself, that he did not report it as income, and that this was done with intent to evade tax thereon. Accordingly, under section 276(a), I.R.C. 1939, assessment of additional tax for the years 1946 and 1947 is not barred by the statute of limitations and respondent's determinations of additions to tax under section 293(b) for both years are approved. While the burden of proving fraud is on respondent, the deficiencies determined by respondent are presumptively correct and the burden of proving that they are wrong rests on petitioner. Louis Halle, 7 T.C. 245, affd. 175 F. 2d 500 (C.A. 2), certiorari denied 338 U.S. 949; Rule 32, Tax Court Rules of Practice.
Practically no evidence was presented with respect to disposition of the proceeds of any specific check cashed by petitioner, except evidence that petitioner initially received such proceeds and evidence that Commodore eventually billed customers for the "cut numbers" written on the face of some of the checks. Petitioner asserts *233 that the latter evidence proves at least that the checks were used for payments on orders actually delivered to customers, the income from which was reported as income by Commodore. These "cut numbers" were admittedly placed on the checks by petitioner, who also admittedly entered the name of a fictitious payee thereon. Further, such evidence does not prove that the checks were actually used to pay for work on the orders eventually delivered to customers. We note that the total of the checks stipulated in evidence falls short of the total additional income charged to petitioner from this source in the notice of deficiency, and that the proceeds of the check dated December 31, 1946 in the amount of $1,342.75 have apparently been charged to petitioner as income in the year 1947. But in the absence of any affirmative evidence that respondent's determinations with respect to this type of additional income are wrong, we must find that respondent's determinations are correct. The evidence with respect to the additional income of $27,375.24 charged to petitioner in the year 1946 for sales of linings and woolens to Ramley Clothes is also rather skimpy. In fact, we cannot tell from either *234 the pleadings, the stipulation of facts, any evidence introduced by respondent, or respondent's brief just how respondent arrived at this figure. Respondent offered no evidence on this issue, but chose to rely on the presumption that his determination was correct. Petitioner, being faced with the presumption and no explanation, introduced ledger sheets and sales invoice sheets from the books and records of Commodore which, together with his explanation thereof, indicated that in June 1946, Commodore purchased from Nason Silk Company of New York, through Burtons Studio Clothes of California, approximately 53,000 yards of linings, that approximately 18,000 yards of these linings were invoiced by Commodore to various customers, that approximately 33,000 yards of the linings were invoiced to Burtons Studio Clothes, and the balance of the Nason Silk lining was cut and delivered as a part of garments invoiced to Burtons. Petitioner denied knowing a Ramley Clothes or having ever sold anything to Ramley Clothes, either individually or on behalf of Commodore. Only on rebuttal did respondent give any indication as to the basis for his charge of this additional income to petitioner. By means *235 of an invoice from Commodore to Burtons, upon the back of which appeared certain notations in petitioner's handwriting, and by means of certain additional evidence of doubtful competency and relevancy in the form of two invoices from "Franklin J. Toomey," of New York, to Ramley Clothes of California, respondent attempted to show that some of the same goods Commodore purchased from Nason Silk were sold to Ramley. A ruling on the admissibility of this evidence was reserved. On reviewing the record, we do not believe this evidence was properly identified or related to the facts in this case. But even if it is considered, it is at best very tenuous evidence that petitioner sold these goods to Ramley. No one identified Toomey or showed any relationship between petitioner and either Toomey or Ramley. As petitioner pointed out, after he invoiced the goods to Burtons, Burtons could have rerouted the goods wherever it wanted. The records show that Commodore received payment for these goods from Burtons. Also the invoices to Ramley total only $5,730.55, whereas petitioner is charged with having received from Ramley $27,375.24. We think the evidence supports petitioner's explanation of the *236 disposition of the Nason Silk linings. It appears from respondent's argument on brief that his determination that petitioner received this additional income is based on a purported resale of some of the Nason Silk linings to Ramley. The evidence does not support this contention and we can give very little weight to the presumption in favor of respondent's determination in the absence of any explanation of how it was made. The only evidence with respect to the deduction for a bad debt disallowed by respondent for the year 1947 is petitioner's testimony that he loaned a friend $1,800 in 1946, took judgment against him in 1947, that the judgment was attached in partial satisfaction of a judgment taken by a third party against petitioner, and that petitioner was repaid nothing personally on the loan. There is no evidence to show that petitioner received credit for less than the full face value of his judgment against Friedland in partial satisfaction of the judgment against petitioner. Petitioner has failed to prove that this debt became worthless in 1947, and respondent's determination is approved. It was stipulated that petitioner was credited with interest of $44.33 and $31.34 for *237 the years 1946 and 1947, respectively, on a savings account, and petitioner testified that he owned certain interest-bearing Government bonds during the years in question. No evidence was presented to show how much interest was earned on the Government bonds. Petitioner failed to prove that respondent's determination that he received unreported interest income from savings accounts and Government bonds in the amounts of $261.02 and $352.89 in the years 1946 and 1947, respectively, was erroneous, and respondent's determination is approved. There was no evidence that respondent erred in disallowing $60 of a claimed deduction of $100 for city sales tax for the year 1947, and respondent's determination is approved. Decision will be entered under Rule 50.